## Hardwick v. Commonwealth.

Oct. 3, 1944.

As Extended on Denial of Rehearing Nov. 28, 1944.

Gladstone Wesley, C. L. Tartar, Jr., and B. J. Bethrum for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

Under an indictment charging him with the murder of his former wife, the appellant was convicted of manslaughter and sentenced to twelve years confinement in the penitentiary. In their brief his counsel make only three complaints: Alleged incompetent evidence in proving other alleged crimes; alleged improper cross-examination of his character witnesses; alleged erroneous instruction on self-defense.

The appellant and the deceased were married in 1922 and divorced in May of 1943. They had three children living, two daughters and a son. At the time of the divorce proceeding the son was, as he ever since has been, in the armed service of his country; the two daughters remained with the mother. Some time after the divorce had been granted the defendant prevailed upon his former wife to permit him to occupy a separate room in the home with her and the daughters. On Easter Sunday of the present year, when no one was present in the home except the two of them, he shot and killed her— an examination of her body disclosing seven wounds. He admits the shooting and killing, and his counsel's classification of points and authorities in effect concede that the evidence which the court permitted the jury to receive and consider is sufficient to sustain the verdict. In short, they rely on only the three grounds listed above.

The appellant's objection as to the evidence relates principally to question No. 2 and its answer in the testimony of Louise, one of the daughters; to questions Nos. 8 and 9, and the answers thereto, in the testimony of Sallie Dykes; and to questions Nos. 1 and 2 in the testimony of Dr. A. J. Wahle. For brevity and clarity, we quote verbatim:

"Q. 2 (To Louise Hardwick, one of the daughters, who was testifying as to threats which the appellant had made against her mother). How long had he treated her in that way? A. Ever since he killed that man.

"Mr. Wesley: We object to that answer.

"The Court: Objection sustained.

"Mr. Wesley: We move the court to discharge the jury and continue the case.

"The Court: Let the motion be overruled.

"Mr. Wesley: Save an exception."

"Q. 8 (To Sallie Dykes). Did he make a threat? A. Yes, sir.

"Q. 9. Tell the jury what he said. A. He said he ought to have killed her when he shot her before—he ought to have finished her up.

"Mr. Wesley: We object to that answer.

"The Court: Objection sustained; the jury will not consider the answer for any purpose.

"Mr. Wesley: We move the Court to discharge the jury and continue the case.

"The Court: Let the motion be overruled.

"Mr. Wesley: Save an exception.

"Q. 1 (To Dr. A. J. Wahle, who was testifying as a character witness for appellant). Doctor, had you heard that he had on many occasions threatened to shoot his wife's brains out?

"Mr. Wesley: We object to the question.

"The Court: Objection overruled.

"Mr. Wesley: Save an exception.

"A. I never heard that, no.

"Q. 2. Did you know of his habit of keeping an arsenal of two shot guns and several pistols in his room?

"Mr. Wesley: We object to that.

"The Court: Objection overruled.

"Mr. Wesley: Save an exception.

"A. No."

In support of their objections to the foregoing, counsel perceive a design on the part of the Commonwealth's attorney to bring into the case highly incompetent testimony for the purpose of influencing and prejudicing the jury. This court does not so interpret the prosecuting officer's purpose, nor is it persuaded that

the appellant's rights were substantially prejudiced. There is nothing in the phraseology of the question to the daughter from which it is reasonably inferable that the Commonwealth's attorney desired or expected the witness to answer as she did. The court promptly sustained counsel's objection to the question, and this, we think, neutralized any prejudicial effect that it might otherwise have had. Certainly it was not of sufficient prejudice to authorize the trial court to set aside the swearing of the jury. The presumption is ever indulged that our juries are composed of fair, sensible and understanding men and women, and the rule with reference to admonitions and exclusions should not be extended to the point of absurdity. Furthermore, the lack of severity in the jury's verdict is not consonant with the appellant's complaint of passion and prejudice.

In the instance of the testimony of Sallie Dykes, it is the Commonwealth which should complain, not the appellant. This witness was testifying as to threats that she personally had heard the appellant make against his wife. And although those threats were competent, the court sustained the appellant's objection and admonished the jury not to consider the witness' answer.

In support of their complaint that the questions propounded to the character witnesses were so incompetent and prejudicial as to entitle their client to a new trial, counsel cite the cases of Fugate v. Commonwealth, 211 Ky. 700, 277 S. W. 1029; Girkey v. Commonwealth 240 Ky. 389, 42 S. W. 2d 516; Black v. Commonwealth 240 Ky. 620, 42 S. W. 2d 883. A perusal of the opinions in those cases will reveal that the court was dealing there with extreme and aggravated instances. In those cases the view is expressed that the right of such interrogation should be exercised in good faith and should not be abused. That such questions are legitimate and proper within reasonable limits has been very clearly and very accurately expressed by Judge Thomas in the comparatively recent case of Ellison v. Commonwealth, 272 Ky. 364, 114 S. W. 2d 130, 133, from which we quote:

"The propounding of the character of questions complained of to other witnesses, testifying as to the good character of appellant, was for the purpose of testing—not only the accuracy of their testimony affirming his good character—but also to affect the credibility

of such character witness, for if they had heard of the incidents, to which the questions related, they would appear to be falsifying their answers as to defendant's good reputation to which they testified. Such method of examination in similar circumstances is universally approved, and so much so that we deem it unnecessary to cite cases in support thereof, and we will not lengthen the opinion by an attempt to do so.''

The views herein expressed with respect to the testimony of the witnesses named, obviate any necessity to discuss specifically the objections which were made to the testimony of other witnesses who testified in similar vein.

A considerable portion of appellant's brief is devoted to the self-defense instruction:

''Although the jury may believe and find from the evidence in this case beyond a reasonable doubt that the defendant, McKinley Hardwick, in this county, and before the finding of the indictment herein, shot and wounded Rosalie Hardwick, from which shooting and wounding the said Rosalie Hardwick died, yet if the jury further believe and find from the evidence that at the time he did so shoot and wound the said Rosalie Hardwick, he believed and had reasonable grounds to believe that the said Rosalie Hardwick was then and there about to inflict upon him death or some great bodily harm, and that there appeared to the defendant, in the exercise of a reasonable judgment, no other safe means of averting the then real, or to the defendant apparent, danger, then the Court instructs the jury that the defendant had the right to use such means as was necessary or as reasonably appeared to him to be necessary, but no more, to ward off the then real or apparent impending danger, even to the taking of the life of the said Rosalie Hardwick; and if you so believe you should acquit the defendant on the grounds of self-defense and apparent necessity.''

His counsel argue with much sincerity and vigor that this instruction is highly erroneous and did their client a great injustice. They insist that the instruction as given suggested to the jury that appellant was under an obligation to flee; and to correct that impression, so they argue, the court should have added to the words ''and that there appeared to the defendant, in the

exercise of a reasonable judgment, no other safe means of averting the then real, or to the defendant apparent danger" the words "short of flight." We do not find that this instruction contains the vice which counsel profess to find in it. True, the words "short of flight" have been used and approved in several cases, but we have been unable to find a case holding that it is reversable error not to use them if the instruction is not otherwise so worded as to render their presence imperative. In the case of Fields v. Commonwealth, 275 Ky. 136, 120 S. W. 2d 1021, 1023, substantially the same objection was made that is made by the appellant here. The ruling of this court in disposing of the argument there likewise disposes of the argument here. In that case, after quoting from the instruction the following: " '* * * and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment to be necessary to shoot the deceased in order to avert that danger, real or to the defendant apparent, * * *,' " the court said:

"It is argued that the word 'avert' as used in the quoted excerpt renders the instruction prejudically erroneous and the cases of Oliver v. Commonwealth, 236 Ky. 672, 33 S. W. 2d 684, and Slone v. Commonwealth, 236 Ky. 299, 33 S. W. 2d 8, which is referred to in the Oliver case, are cited. The instructions in the cases cited were condemned because they contained or conveyed the idea that the accused could not defend himself against an attack if he could escape the danger by flight or otherwise. But it will be seen in this case that instruction No. 3 does not contain or convey any such idea. In Utterback v. Commonwealth, 59 S. W. 515, 60 S. W. 15, 22 Ky. Law Rep. 1011, it is held in effect that the word 'avert' is not equivalent to or synonymous with the word 'escape'. When the instruction is read as a whole it is obvious that it does not contain the vice attributed to it by counsel."

Use of words "but no more", of which appellant complains, was approved in McCurry v. Commonwealth, 205 Ky. 211, 265 S. W. 630.

On the whole case it is the opinion of the court that nothing happened during the course of the trial that had the effect of prejudicing any of the appellant's substantial rights.

Judgment affirmed.