## HICKS v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 4, 1954.

182

Jack E. Fisher and Reed & Hines, Paducah, for appellant.

J. D. Buckman, Jr., Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

CAMMACK, Justice.

James Hicks was tried under an indictment charging him with the willful murder of Margaret Ann Coovert. He was convicted of voluntary manslaughter and sentenced to prison for 21 years. Hicks seeks reversal of the judgment on the fol-

lowing grounds: (1) The court erred in not giving a concrete instruction on Hicks' theory of the case; (2) incompetent evidence was admitted and competent evidence was excluded; (3) prejudicial argument was made by the Commonwealth's Attorney; and (4) an erroneous instruction on self-defense was given.

On Wednesday, March 25, 1953, at about 8:00 a. m., Hicks and Miss Coovert checked in the Royal Motel as man and wife. They carried into their cabin two cartons of 7-Up, a fifth and a pint of whiskey. They drank, slept and engaged in sexual intercourse until 11:00 p. m. that night, at which time they went to a near-by restaurant and ate. They then returned to the cabin and drank more whiskey and engaged in conversation. The next morning Hicks went to the motel office to try and find a doctor for Miss Coovert. While in the office he asked the attendant, Miss Davis, to see if she could assist Miss Coovert. Miss Davis went to the cabin and found Miss Coovert dead. A short time later the sheriff and coroner were called. Their investigation revealed that the bed was broken down on the side away from the wall. On the broken side Miss Coovert lay dead in her underclothes. They found bloodstains in the wash basin, on the floor, around the light switch, on a towel, and on the sheets and pillow case. Upon the examination of Miss Coovert's body they found bruises on the right and left side of her face and head, also bruises on the rear of her head, and some on her breast, arms and near the pelvis. On a table they found an empty fifth whiskey bottle, a pint with about one inch of whiskey remaining in it, and ten 7-Up bottles. One of these bottles had some substance on it which they determined was blood and hair. Dr. W. B. Haley performed an autopsy on Miss Coovert and found that she died as the result of a blow on the back of her head.

Hicks' explanation of the death of Miss Coovert is that shortly after they entered the cabin on Wednesday morning they had a few drinks of whiskey and went to bed. They slept until 11:00 p. m., at which time they went to a restaurant and ate. Upon returning to the cabin they sat on the bed partially clothed until about 2:00 a. m. During this time they drank all but one-half of the pint of whiskey. Hicks said he became sleepy and went to sleep, but was awakened a short time later by Miss Coovert, who was jumping up and down in the bed. He said she told him to wake up so they could have a good time. Hicks said further that Miss Coovert, while jumping on the bed, lost her balance and fell out on the floor. While she was on the floor, he told her "to try it again." Whereupon she climbed back into bed and began jumping again and as a result the bed on her side gave way and she fell on the floor again. Shortly after this fall he heard her crying. He then got out of bed and put her back on the fallen portion of the bed. He went to the bathroom and got a towel and washed her face and head until she stopped crying. After she stopped crying, he rinsed out the towel and went back to bed.

■■ The rule followed in this jurisdiction as to when an accused is entitled to a concrete instruction on his theory of the case is stated in Reynolds v. Commonwealth, Ky., 257 S.W.2d 514, 515. It is that:

"* * * where the instruction submitting the Commonwealth's theory of the case is couched in such language the ordinary juror can easily understand, and its negative (raised by the usual reasonable doubt instruction) completely and adequately covers the defense of accused, it is not necessary to give an affirmative instruction embodying his theory."

In viewing the instructions in the present case we find they completely covered Hicks' defense because they authorized the jury to find him not guilty if they did not believe beyond a reasonable doubt that he had assaulted and killed the Coovert girl; and, furthermore, the self-defense instructions were more than favorable to him.

■ Hicks urges also that prejudicial error was committed by the court in permitting evidence of conditional threats

allegedly made against the deceased. The Commonwealth introduced Ina and Dorothy Keeling, who testified that Hicks made the following threat in their presence: "if he ever caught her going out with anybody he would kill her." Although it is not shown that the conditions of that threat were ever met, it nevertheless was competent to show a malicious attitude and state of mind and was substantive evidence to be weighed by the jury. Oney v. Commonwealth, 225 Ky. 590, 9 S.W.2d 723; Roberson's New Kentucky Criminal Law and Procedure, Second Edition, section 496.

■ Other evidence admitted which Hicks claimed was prejudicial to him were the answers given to the Commonwealth's questions over his objections. The Commonwealth's Attorney asked Hicks' character witnesses if they thought that the conduct of a man who made it a practice of taking unmarried women into motels and staying with them was evidence of good character. The witnesses answered, "No." In the cases of Fugate v. Commonwealth, 211 Ky. 700, 277 S.W. 1029; Girkey v. Commonwealth, 240 Ky. 389, 42 S.W.2d 516; and Black v. Commonwealth, 240 Ky. 620, 42 S.W.2d 883, the Commonwealth, in order to test the knowledge of the defendant's character witnesses asked them if they ever heard that the defendant had committed certain acts, and the witnesses answered, "No." The Commonwealth then asked the witnesses what their opinion of the defendant's character would be if they had known that the defendant did commit these acts. We reversed the judgments in those cases because of the rule that, when a witness is asked if he ever heard of a defendant doing certain acts and he answers "No," the court should then admonish the jury not to consider the questions for any purpose and stop the Commonwealth from pursuing the question any further. In the case at bar the accused admitted taking the deceased to motels on different occasions; therefore, it is distinguishable from the foregoing cases because there was no showing in those cases

that the defendant admitted or was guilty of the acts imputed to him in the questions.

■ The Commonwealth introduced a number of 7-Up bottles, one of which was chipped, and two whiskey bottles. Hicks objected to their introduction because they were not removed from the cabin until 7:00 p. m. on the day the Coovert girl was found dead. This was not error because the bottles were identified by the investigating officers as the ones found in the cabin at the time of their investigation.

■ The court excluded the following question and answer asked Margaret Stewart, the waitress at the place where the accused and Miss Coovert ate at 11:00 p. m., as calling for an opinion:

"Q. Were they friendly or unfriendly?

"Objection

"A. Friendly."

The following question asked Dr. Haley was excluded as being theoretical:

"Q. Could she have sustained an injury on the left side and then got up and sustained an injury on the right side, in your opinion?

"Objection

"Avowal: If permitted to answer, the witness would say, 'Yes, indeed, she could.'"

Hicks contends this evidence was admissible because it was evidence to substantiate his theory of the case. We fail to see how its exclusion was prejudicial because at most it was only cumulative.

■ The Commonwealth's Attorney, in his closing argument stated in substance that:

"As Dr. Haley told you, Margaret Ann Coovert was injured at the base of her skull. I will tell you what happened in this case. James Hicks beat Margaret Ann Coovert to death with

this bottle (exhibiting to the jury a 7-Up bottle with certain foreign matter thereon). He beat her to death in the bathroom with this bottle by striking her at the base of the skull and then carried her from the bathroom to the bed. As proof of the fact that this happened in the bathroom, the lavatory in the bathroom was filled with diluted blood. Dr. Haley also testified that her left eye was closed."

Hicks objects to this argument because he contends that the indictment was drawn, instructions given, and the case tried on the theory that Hicks beat Miss Coovert to death with his fists. In the body of the indictment it was stated, "with his hands and fists and other objects." Also the instruction contained the following phrase, "beat or strike Margaret Ann Coovert on or about the head or face or body with his hands or fists or other objects." We fail to see anything improper in this argument. Clearly it was in keeping with the indictment, instructions and evidence. Hicks contends that the statement in the Commonwealth Attorney's argument, wherein he said that Dr. Haley stated that Miss Coovert's left eye was closed, was untrue and highly prejudicial. Dr. Haley testified that there were bruises on the left and right temple and a fairly large bruise on her left eye. We are not convinced that the jury was misled in any way by that statement because there was evidence to the effect that Miss Coovert's eye was in a damaged state.

■ Hicks' final complaint is that the self-defense instruction was erroneous. The rule is that, where there is no eye-witness to a homicide and the evidence is wholly circumstantial, and there are conditions indicating that there was a struggle at the time, the court should give the whole law of homicide, including instructions on manslaughter and self-defense. Bond v. Commonwealth, 257 Ky. 366, 78 S.W.2d 1; and Fletcher v. Commonwealth, 239 Ky. 506, 39 S.W.2d 972. Hicks denied that there was a struggle and he did not plead self-defense, but in his instructions the court repeatedly called to the jury's attention the question of self-defense and also gave a separate instruction on self-defense. As we have indicated, the instructions on this phase of the case were quite favorable to Hicks.

Judgment affirmed.